**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Javier P.B.,

Petitioner,

v.

Markwayne Mullin, et al.,

Respondents.

**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

Civil File No. 26-04224 (MJD/SGE)

---

Pamela Guerrero, Bienvenidos Law Firm, Inc., Counsel for Petitioner.

Derek Ganzhorn, David W. Fuller, Assistant United States Attorneys, Counsel for Respondents.

---

This matter is before the Court on Petitioner Javier P.B.'s Petition for Writ of Habeas Corpus. (Doc. 1.) Petitioner claims he is being detained in violation of the Fourth and Fifth Amendments. Respondents counter that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2).

## I. FACTS[1]

---

[1] Facts not disputed are deemed admitted. See Paula G. v. Bondi, No. 26-CV-410 (JMB/DLM), 2026 WL 146003, at *1 n.2 (D. Minn. Jan. 20, 2026).

Petitioner is a citizen of Mexico, who arrived to the United States in 1990 without inspection.[2] (Doc. 1 ¶ 35.) Before his detention, Petitioner was living in St. Paul, Minnesota with his wife, his stepdaughter, and his youngest son, who is a U.S. citizen. (Id.) Petitioner also has two older daughters, aged 24 and 26, both of whom are U.S. citizens. (Id.) Petitioner has worked at his construction company, Pinon Construction LLC, for about nine years. (Id. ¶ 28.)

Petitioner has a criminal record. In November 1998, Petitioner was convicted in Illinois for criminal damage to property. (Doc. 6 at 1.) In April 2004, Petitioner was arrested for driving under the influence, and he pled guilty to careless driving. (Id.) In April 2008, Petitioner was arrested for driving under the influence, although his case was dismissed in November 2013. (Id. at 2) In May 2022, an arrest warrant was issued for Petitioner under an alias for a sex offense, listed in Petitioner's Report of Deportable/Inadmissible Alien as "child fondling." (Id.; Doc. 6-1 at 2.) It is unclear from the record the outcome of this most recent case. Prior to the events giving rise to this petition, Petitioner has not had any contact with DHS. (Id. ¶ 26.)

[2] Petitioner asserts that he arrived to the United States in 1999. (Doc. 1 ¶ 35.) Respondents indicate that Petitioner arrived in 1990. (Doc. 6-1 at 2.) Considering Petitioner's arrest in 1998, the Court will consider 1990 as Petitioner's date of entry.

On September 25, 2026, ICE agents were conducting "fugitive operations" in St. Paul. (Doc. 6-1 at 2.) Officers spotted Petitioner's white van while he was on his way to his tax preparer's office, and they ran a records check on his Minnesota license plate. (Id.; Doc. 1 ¶ 36.) Respondents maintain that the vehicle records revealed that van was registered to an "illegal alien." (Doc. 6-1 at 2.) Respondents then note that ICE/ERO issued a Notice to Appear and Warrant for Arrest of Alien (Form I-200). (Doc. 6 at 2.)

Once Petitioner left the office and entered his van, officers approached him. (Doc. 6-1 at 2.) Petitioner exited his van, where officers then identified themselves and arrested him. (Id.) Respondents maintain that officers served the I-200 on Petitioner after he was handcuffed and arrested. (Id.) Petitioner, however, contends that he was not served a warrant at the time of his arrest. (Doc. 1 ¶ 37.)

Following his arrest, Petitioner was transported to Fort Snelling for processing. (Doc. 6-1 at 2.) Petitioner was later transferred to Sherburne County Jail, where he remains detained. (Doc. 1 ¶ 1.)

Petitioner filed the instant Petition for Writ of Habeas Corpus on September 30, 2026. (Doc. 1.) On October 1, the Court issued an Order to Show Cause (Doc. 3.) On October 7, 2026, Respondents submitted a response. (Doc. 5.)

In addition to their response, Respondents filed a declaration from Benjamin Northwood, an ICE Deportation Officer, a Record of Deportable/Inadmissible Alien (Form I-213), a Warrant for Arrest of Alien (Form I-200), and a 2026 Notice to Appear, and. (Docs. 6, 6-1, 6-2, 6-3.) Petitioner submitted a reply on October 12, 2026. (Doc. 7.)

## II. DISCUSSION

Petitioner argues that he is currently detained in violation of 1) the Fourth Amendment and 2) the Fifth Amendment's procedural and substantive protections. (Doc. 1 ¶¶ 41–64.)

### A. Jurisdiction

A writ of habeas corpus may be granted to a petitioner who demonstrates he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). District courts have jurisdiction to hear habeas challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

> It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders. But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.

Id. at 693 (citations omitted). This "distinction between an alien who has effected

an entry into the United States and one who has never entered runs throughout immigration law." Id. The petitioner bears the burden to prove illegal detention by a preponderance of the evidence. See Belsai D.S. v. Bondi, 810 F. Supp. 3d 1016, 1020 (D. Minn. 2025) (citations omitted).

**A. Effect of Avila v. Bondi on Petitioner's Claims**

Respondents argue that Petitioner is subject to mandatory detention pursuant to § 1225(b)(2), as confirmed by the Eighth Circuit in Avila v. Bondi 170 F.4th 1128 (8th Cir. 2026). (Doc. 5 at 3.) While the Eighth Circuit's decision in Avila would preclude a statutory claim premised on § 1225, Avila does not foreclose constitutional or statutory claims not raised in that case. The Court therefore turns to Petitioner's constitutional arguments.

**B. Fifth Amendment Due Process**

Petitioner applies the Mathews v. Eldridge balancing test to argue that his continued detention without an individualized hearing violates his constitutional due process rights guaranteed by the Fifth Amendment. (Doc. 1 ¶¶ 60–64 (citing Mathews, 424 U.S. 319 (1976).)

Respondents state that Petitioner's due process claim fails for three reasons. First, Respondents contend that Petitioner raises a "substantive, not procedural challenge," because the facts Petitioner seeks to establish hearing are

"irrelevant" under the statutory scheme that mandates his detention. (Doc. 5 at 4–7 (citing Connecticut Dep't of Pub. Safety v. Doe, 538 U.S. 1, (2003).)

Second, Respondents maintain that Petitioner is not entitled to an individualized hearing because Congress created a mandatory detention scheme that the Supreme Court and Eighth Circuit case law upheld. (Doc. 5 at 7–12.)

Third, Respondents argue that even if the Court applied the three-part balancing test in Mathews, Petitioner's claim must still fail (Id. at 17–19.)

**1. Petitioner's Fifth Amendment Protections**

Petitioner is entitled to due process of law under the Fifth Amendment. The Fifth Amendment provides, in pertinent part, that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The United States Supreme Court has made clear that the "Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693.

**2. Procedural vs. Substantive Due Process**

Respondents argue that Petitioner's due process claim should be classified as substantive, rather than procedural. In support, Respondents rely on

Connecticut Dep't of Pub. Safety v. Doe, where the Supreme Court stated that "Plaintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme" and that if not, "[s]uch claims must ultimately be analyzed in terms of substantive, not procedural, due process." 538 U.S. 1, 8 (2003). Here, Respondents note that Petitioner seeks to establish that he is entitled to a bond hearing to assess whether he is a flight risk or danger to the community. (Doc. 5 at 3.) Yet, Respondents contend that such determinations are "irrelevant to the application of § 1225(b)(2)(A)," which mandates detention, so a "hearing on those issues would be a 'bootless exercise.'" (Id. (citing Doe, 538 U.S. at 8).)

The court in Julio Victor R.R., v. Blanche discussed Doe in the context of the procedural due process balancing test; still, however the Court is persuaded by its reasons to distinguish the case in the discussion here:

> Doe involves an altogether different context. The plaintiff in Doe challenged the constitutionality of a state law requiring him to register as a sex offender based upon a prior conviction. Doe claimed only that requiring him to register in this way resulted in reputational harm, not that it implicated his interest in freedom from confinement. By contrast, [Petitioner's] claim in this case directly implicates his fundamental interest in physical liberty. [In addition] . . . the Court disagrees that the INA alone sets the floor for the due process that is required; the Constitution can, and does, require more.

No. 26-CV-2853 (KMM/DJF), 2026 WL 2517137, at *7 (D. Minn. Aug. 26, 2026) (internal citations omitted). Consequently, the Court is not persuaded that Doe requires the Court to consider Petitioner's due process claim as substantive rather than procedural.

In addition, Petitioner here "undoubtably also argues that [his] detention without bond deprived [him] of [his] liberty without due process of law." United States. Lopez-Campos v. Raycraft, 175 F.4th 713, 733 (6th Cir. 2026). Because procedural due process challenges specifically address the "adequacy of the procedures" used to deprive someone of their liberty, the Court will consider Petitioner's procedural due process challenge as properly raised. Mathews, 424 U.S. at 335.

### 3. Supreme Court & Eighth Circuit Precedent

Respondents argue that Supreme Court and Eighth Circuit precedent confirm that mandatory detention pursuant to 8 U.S.C. § 1225(b)(2) satisfies due process. (Doc. 5 at 7–12.) In support, Respondents rely primarily on Jennings v. Rodriguez, 583 U.S. 281 (2018), Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103 (2020), Demore v. Kim, 538 U.S. 510 (2003), and Banyee v. Garland, 115 F.4th 928 (8th Cir. 2024). The Court continues to be unpersuaded that these cases

either resolve the due process question or preclude the Court's consideration of it at all.

First, the Court finds that Jennings is irrelevant to the issue facing the Court. The Supreme Court in Jennings specifically did not reach the underlying due process question, so Respondents' considerable reliance on it is necessarily misplaced. See 583 U.S. at 302–14.

Moreover, Thuraissigiam is similarly not on point. The Petitioner in Thuraissigiam did not raise a habeas corpus claim to challenge his detention; rather, he attempted to use the habeas process to seek review of his asylum claim. 591 U.S. 103, 140 (2020) ("[A]n alien in respondent's position has only those rights regarding admission that Congress has provided by statute."). The Thuraissigiam Court then did not "address whether the petitioner's detention itself was unlawful or inconsistent with the Due Process Clause and did not deal with a core habeas challenge to detention" like Petitioner here. R. M. v. Blanche, No. 26-CV-2283 (LMP/DLM), 2026 WL 1506306, at *6 (D. Minn. May 29, 2026).

Even if the Court's analysis in Thuraissigiam applied here, the case is still easily distinguishable on the facts. The petitioner in Thuraissigiam "was apprehended 25 yards from the border and was thereafter continuously

detained," while the Petitioner here has lived in the United States for over 30 years. Manuel G., 2026 WL 1256358, at *4. (emphasis added). The Court is persuaded that the factual predicate for Thuraissigiam, therefore, "merely reinforces [the] longstanding understanding that noncitizens on the threshold of initial entry stand on a different footing than those who have passed through our gates." Lopez-Campos v. Raycraft,175 F.4th 713, 733 (6th Cir. 2026) (citation omitted) (cleaned up).

Finally, Banyee and Demore do not preclude a procedural due process challenge because both cases considered a provision of the INA not at issue here. In Banyee v. Garland, the Eighth Circuit determined that a noncitizen's continued detention during his pending appeal of a removal order based on a criminal conviction did not implicate due process. 115 F.4th at 933. (quoting Demore, 538 U.S. at 527) ("[T]he [g]overnment can detain an alien for as long as deportation proceedings are still 'pending.'" (emphasis omitted)). Petitioner Banyee had been detained pursuant to 8 U.S.C. 1226(c), which permits mandatory detention based on convictions for certain enumerated offenses, and specifically due to his conviction for robbery with a dangerous weapon, a "crime of violence," which qualified as an "aggravated felony" under § 1226(c). Id. at

930 (citing § 1226(c)(1)(B)). While he appealed the immigration judge's determination that his conviction was a qualifying felony, petitioner remained detained for over a year. Id. Petitioner filed a habeas petition, arguing that his continued detention violated due process. Id. at 930–31.

The Eighth Circuit denied Banyee's petition, determining that he was not entitled to a bond hearing pending his deportation. Id. at 931. The court reasoned that the length of his detention was not an issue, instead stating that "what matters is that detention pending deportation 'ha[s] a definite end point'—deporting or releasing the alien." Id. at 930, 932 (cleaned up) (citing Demore v. Kim, 538 U.S. at 528–29 (drawing the same definite-versus-indefinite distinction); Zadvydas, 533 U.S. at 697).

Demore similarly involved a petitioner who had been convicted of at least one aggravated felony offense and argued that mandatory detention pursuant to § 1226(c) violated the Due Process Clause. 538 U.S. at 522–23. The Supreme Court rejected his argument, stating that Congress has "justifiab[le] concern[s] that deportable criminal aliens who are not detained [would] continue to engage in crime and fail to appear for their removal hearings" without continued detention. Id. at 513.

Although Respondents urge the Court to treat the two separate statutes as effectively identical because both require mandatory detention, the Court declines to do so. Petitioner here is detained pursuant to § 1225(b)(2), a materially different statutory scheme than § 1226(c), which governs applicants for admission to the country, not individuals already deemed removable based on convictions for serious criminal offenses. Although both statutes provide for mandatory detention under certain circumstances, the statutory schemes at issue require mandatory detention on considerably different factual circumstances. For instance, in enacting § 1226(c), Congress made specific, categorical judgments about the dangerousness and flight risks posed by noncitizens convicted of certain enumerated offenses. Moreover, due process concerns for detention under § 1226(c) "were mitigated because those noncitizens, as part of securing their criminal convictions, would have received the 'full procedural protections our criminal justice system offers.'" R. M. v. Blanche, No. 26-CV-2283 (LMP/DLM), 2026 WL 1506306, at *4 (D. Minn. May 29, 2026) (citing Demore, 538 U.S. at 513). That is certainly not the case for Petitioner here.

This Court continues to maintain that there is no reason to read the Eighth Circuit's broad Due Process pronouncements in Banyee as anything but cabined

to the statutory and factual context in which they arose. The Banyee court's analysis is rooted in detention under § 1226(c), and its reliance on Supreme Court precedent reinforces that limited scope. Demore v. Kim similarly permitted mandatory detention tied to certain criminal convictions under § 1226(c), while Zadvydas established a presumptive permissible time period for the detention of those with post-removal orders. See Demore, 538 U.S. at 510 Zadvydas, 533 U.S. at 701. Petitioner's detention arises under a separate statutory provision with an entirely different factual predicate and Petitioner is not subject to a final removal order. The Court is not alone in determining that the cases on which Respondents rely do not preclude Petitioner's due process claim. See e.g., Axel J.M.C. v. Stanski, No. 26-cv-2281 (JRT/EMB), 2016 WL 1171344, at *3 (D. Minn. Apr. 29, 2026); Manuel G. v. Blanche, No. 26-cv-2385 (SRN/ECW), 2026 WL 1256358, at *4 (D. Minn. May 7, 2026); Juan C.M.C., v. Blanche, No. CV 26-2402 (JWB/ECW), 2026 WL 2117276, at *4 (D. Minn. July 22, 2026); Julio Victor R.R., 2026 WL 2517137, at *4–5.

Consequently, the Court must now consider what due process requires in Petitioner's circumstances. See Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what

process is due."); Bus. Commc'ns, Inc. v. U.S. Dep't of Educ., 739 F.3d 374, 380 (8th Cir. 2013). The flexibility of due process "calls for such procedural protections as the particular situation demands." Morrissey, 408 U.S. at 481. Thus, "identification of the specific dictates of due process generally requires consideration of three distinct factors." Mathews, 424 U.S. at 335. The Court will therefore turn to an analysis of the three factors enumerated in Mathews.

**4. The Mathews v. Eldridge Balancing Test**

To determine whether a detainee's due process rights have been violated, courts apply a three-part balancing test that weighs the following:

> [1] the private interest that will be affected by the official action; [2] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [3] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 335.

**a. The First Mathews Factor**

The first factor requires the Court to consider how Petitioner's "private interest" will be affected. Mathews, 424 U.S. at 335. Respondents contend that Petitioner's private interest is "insubstantial" because detention during the pendency of his removal proceedings "does not implicate fundamental due

process." (Doc. 5 at 17.) Further, Respondents' argue that because "none of the rights alleged by Petitioner are cognizable," he is not entitled to due process protections. (Id. at 17–18.)

The Court disagrees. The interest in being free from physical detention is the "most elemental of liberty interests." Hamdi, 542 U.S. at 529; Zadvydas, 533 U.S. at 690. The Court in Zadvydas made clear that "Petitioner's private liberty interest arises not from an interest in remaining in the United States, but from being free from physical restraint." Felipe S.P. v. Blanche, No. 26-CV-2212 (NEB/DJF), 2026 WL 1911656, at *8 (D. Minn. July 2, 2026) (citing Zadvydas, 533 U.S. at 696). Here, Petitioner has spent over 30 years living in the United States and has built a life and community for himself. He is married and has several children who are all U.S. citizens, and he works in construction. (Doc. 1 ¶¶ 35–38.) Considering Petitioner demonstrates significant private interests affected by his ongoing detention, the first Mathews factor favors Petitioner.

**a. The Second Mathews Factor**

The second Mathews factor requires the Court to consider the risk of an erroneous deprivation of Petitioner's liberty as well as "the degree to which additional or substitute procedural safeguards could ameliorate the risks of

erroneous deprivation." Selvin Adonay E.M. v. Noem, 817 F. Supp. 3d 720, 734 (D. Minn. 2025) (citing Mathews, 424 U.S. at 335).

The court in Jesus Alejandro G. A v. Blanche noted that detention during removal proceedings is "'constitutionally permissible'" but "the government's authority to detain noncitizens is not limitless" and "should advance two regulatory goals: (1) ensuring the appearance of noncitizens at their immigration proceedings; and (2) preventing danger to the community while those proceedings are ongoing." No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138, at *11 (D. Minn. May 18, 2026) (citing Demore v. Kim, 538 U.S. 510, 513 (2003); Zadvydas, 533 U.S. at 690)). A bond hearing before an immigration judge where both parties have an opportunity to be heard will allow an immigration judge to determine whether Petitioner's detention is, in fact, necessary to ensure Petitioner will be present at his future immigration proceedings and that he does not pose a danger to his community.

Respondents contend that "Petitioner's removal proceedings will give him every opportunity to make a case for why [he] should be permitted to remain in the United States." (Doc. 5 at 18.) This argument misses the point; whether Petitioner is entitled to remain in the U.S. is a distinct legal question from

whether the government may detain him for an unknown amount of time without actually assessing whether his detention is necessary under the permissible regulatory goals. An opportunity to at some point contest his removal does nothing to address whether he poses the type of flight risk or danger to the community that warrants continued detention.

The Court ultimately disagrees with Respondents. A bond hearing where both parties have an opportunity to be heard will allow the immigration judge to decide whether Petitioner's detention is, in fact, necessary to ensure his presence at future immigration proceedings and that he does not pose a danger to his community considering his community connections as well as his criminal history. Continuous detention such as an opportunity to be heard, especially under his current conditions, does not fulfill the promise of Zadvydas that every person in this country is entitled to due process of law. 533 U.S. at 693; see also Pedro A.D.L.O.O., 2026 WL 948970 at *3. Without an individual hearing, the risk of erroneous deprivation of Petitioner's liberty is too great. The second Mathews factor weighs in favor of Petitioner.

**a. The Third Mathews Factor**

The third Mathews factor requires the Court to consider the government's interest "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335. Respondents argue that the government's interest is strong because "Respondents have strong historical and practical interests in seeing Congress's will given effect," and Congress mandated detention for those detained pursuant to §1225(b)(2). (Doc. 5 at 18–20.)

The Court acknowledges the strong governmental interest in enforcing immigration law and ensuring its uniform application. See Dep't of State v. Munoz, 602 U.S. 899, 911–12 (2024) ("T]he through line of history is recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens."). However, the Court believes that such "interest[] [is] not subverted by requiring the minimal procedural safeguard of a bond hearing." Manuel G., 2026 WL 1256358, at *5. Moreover, considering that other Courts of Appeals have reached the opposite conclusion from the Eighth Circuit in Avila, "Respondents are, therefore, already required to routinely offer bond hearings to people in identical circumstances . . . and requiring them to do

so for him will not significantly change that landscape." Julio Victor R.R., 2026 WL 2517137, at *8 (collecting cases) (internal citations omitted).

In sum, the Court agrees that granting Petitioner a bond hearing – which is hardly an "administrative burden"– will give both parties an opportunity to adequately present arguments on the dangerousness and flight risks posed by Petitioner's specific circumstances. This due process safeguard will reduce the risk of erroneous deprivation of Petitioner's rights without imposing significant burdens on the Government.

**C. Remedy**

All the Mathews factors weigh in favor of Petitioner. Therefore, the Court concludes that mandatory detention pursuant to § 1225(b)(2) as applied to Petitioner violates his constitutional right to procedural due process. The appropriate remedy for this constitutional deprivation is to provide him with an opportunity to be heard. In this case, that means a bond hearing.

Resolution of this issue renders discussion of Petitioner's other arguments unnecessary. See Faysal N. v. Noem, 825 F. Supp. 3d 844, 849 n.3 (D. Minn. Jan. 6, 2026) (when the court's decision on one of petitioner's arguments meant the petitioner's detention was unlawful, the court need not reach other arguments).

## III. ORDER

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. The Petitioner's Petition for Writ of Habeas Corpus **[Doc. 1]** is **GRANTED IN PART** as follows:

    a. Respondents are ordered to provide Petitioner with a bond hearing within one week after the issuance of this Order;

    b. Respondents are ordered to file notice of such bond hearing directly with the Court within two (2) hours of its scheduling[3];

    c. Notice of the bond hearing must give Petitioner and/or his counsel a reasonable time to prepare;

    d. The Immigration Judge is prohibited from denying the opportunity for a bond hearing based on a purported lack of jurisdiction;

    e. If a bond hearing takes place that results in Petitioner's release, Respondents are ordered to:

        i. Release Petitioner into Minnesota;

        ii. At a safe time and place communicated at least two (2) hours in advance to Petitioner's counsel; and

---

[3] The purpose of this is to provide timely notice to Petitioner's counsel so that counsel can prepare for the bond hearing and/or find an immigration law attorney to represent Petitioner at the hearing.

iii. With all of Petitioner's personal effects in Respondents' possession, such as Petitioner's driver's license, immigration papers, passport, cell phone, keys;

f. If a bond hearing does not take place within one week, the Respondents are ordered to immediately release Petitioner from custody into Minnesota with the same conditions of release described in 1(e); and

2. Within 48 hours of the conclusion of the bond hearing or Respondents' decision to release Petitioner from custody, Respondents must file a status report with the Court detailing the results of the Bond Hearing or its actions related to release; and

3. Any motion for attorney fees and costs pursuant to the Equal Access to Justice Act must be filed within 21 days of entry of judgment in this matter, along with a well-reasoned memorandum of authorities explaining why an award of fees and costs is warranted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 21, 2026

s/Michael J. Davis
Michael J. Davis
United States District Court